IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BEN SEXSON

       Plaintiff,

v.                                CIV 13-0944 KBM/GBW

SHERIFF DOUGLAS C. WOOD;
SANDOVAL COUNTY SHERIFF'S
DEPARTMENT; SHERIFF'S DEPUTY
FRED SWITZER, SHERIFF'S DEPUTIES
JOHN DOES 1-5 in their individual capacities,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court on Defendants' Motion and Memorandum for Summary Judgment on All Claims. *Doc. 51*. Pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 73, the parties have consented to me serving as the presiding judge, conducting all proceedings, including trial, and entering final judgment. *See Docs. 6, 7 & 8*. Having reviewed the parties' positions and the relevant authorities, the Court will grant the motion in part as to the federal claims, decline to exercise supplemental jurisdiction and remand the remaining state law claims to the Thirteenth Judicial District Court, Sandoval County.

## I.    INTRODUCTION

Defendant Switzer engaged in a high-speed pursuit of a motorcycle driver and, when the chase was called off, was informed that the motorcycle in question belonged to Plaintiff. Based on this information, Defendant Switzer called Plaintiff's probation officer, who took Plaintiff into custody for questioning. Defendant Switzer did not

ultimately charge Plaintiff for the chase because he could not positively identify him as the driver of the motorcycle. However, at their request, Defendant Switzer did execute an Arrest Order issued by Plaintiff's probation officers for alleged violations of his probation including fleeing a law enforcement officer. Plaintiff asserts that his arrest violated federal and state law. Defendants disagree, and have moved for summary judgment on all claims brought.

## II.    SUMMARY JUDGMENT STANDARD

The Court's "'function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (quoting *Libertarian Party of N.M. v. Herrera,* 506 F.3d 1303, 1309 (10th Cir. 2007)). "If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." *Id.* "These facts 'must establish, at a minimum, an inference of the presence of each element essential to the case.'" *Id.* at 1137-38 (quoting *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th Cir. 2001)). "Unsubstantiated allegations carry no probative weight in summary judgment

proceedings." *Serna v. Colorado Dept. of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (quoting *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir.1992)).

In the event that a party fails to cite materials or otherwise properly address another party's assertion of fact, the Court may consider the fact undisputed and, where the movant is entitled to it, grant summary judgment. Fed. R. Civ. P. 56(e); D.N.M.LR-Civ. 56.1 ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted."). Both the movant and the party opposing summary judgment are obligated to "cit[e] to particular parts of materials in the record" to support their factual positions. Fed. R. Civ. P. 56(c)(1); *see also* D.N.M.LR-Civ. 56.1(b). Furthermore, the content of the evidence adduced at summary judgment must be admissible. *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209 (10th Cir. 2010) ("it is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment"); *Adams. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) ("[t]he nonmoving party does not have to produce evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible.").

An issue of fact is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Savant*, 809 F.3d at 1137 (citing *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013)). "An issue of fact is material 'if under the substantive law it is essential to the proper disposition of the claim.'" *Id.* In other words, "[a] factual dispute is material only if it might affect the outcome of the case." *Christy v. Travelers Indem. Co. of Am.*, 810 F.3d 1220, 1225 (10th Cir. 2016) (citing *Anderson*, 477 U.S. at 248). The Court must view the evidence in the light most

favorable to the party opposing summary judgment. *Tolan*, 134 S. Ct. at 1866 (citations omitted). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III.   UNDISPUTED MATERIAL FACTS

On the morning of September 28, 2012, Defendant Switzer was on patrol in Rio Rancho, New Mexico, as a deputy for the Sandoval County Sheriff's Department. Defendants' Motion for Summary Judgment, *Doc. 51* ("MSJ") at Undisputed Material Fact ("UMF") ¶¶ 2-6.[1] Defendant Switzer noticed a stocky white male of medium height speeding on a motorcycle and gave pursuit with his lights and siren engaged. UMF ¶¶ 6-7. At one point the driver of the motorcycle pulled over to the side of the road, but fled when Defendant Switzer approached on foot. UMF ¶ 7. Defendant Switzer followed the driver but eventually called off the chase upon entering an area with heavy foot traffic and children going to school. Defs' Exh. A at 3. Before giving up the chase, however, Defendant Switzer was able to obtain the plate number of the motorcycle and radioed in that information. UMF ¶ 9.

After calling off the chase, Defendant Switzer received word over his radio that a Village of Corrales police officer wanted to speak with him. Defs' Exh. A at 4. Defendant Switzer was informed by this officer that the motorcycle he had pursued belonged to Sexson and that he was the one who usually drove it. UMF ¶ 10.[2] Given the information

---

[1] In Paragraph 1 of Plaintiff's Response to Statement of Material Facts, *Doc. 52*, ("Pl.'s Resp."), Plaintiff concedes that he does not dispute the facts set forth in the MSJ at ¶¶ 1-9

[2] Plaintiff disputes UMF ¶ 10 by arguing that "Defendant Switzer never had a good faith basis to identify Plaintiff as the driver of the motorcycle" because the information that Defendant Switzer received was from the Corrales Police Department "an agency that had an axe to grind against Plaintiff." Pl.'s Resp. at

4

he received from the Corrales police, Defendant Switzer left a voicemail for Plaintiff's probation officer, Stephen Trujillo, seeking additional information about Plaintiff. Plaintiff's Additional Material Facts ("AMF") ¶ 1; Pl's Exh. 2 at 35:16-24.

Plaintiff testified that between 7:30 and 8:00 on the morning in question, Mr. Trujillo called him and asked him to come in to the Probation and Parole office. UMF ¶ 12.[3] Shortly thereafter two probation officers arrived at Plaintiff's house. Defs' Exh. B at 11. The officers entered Plaintiff's home, asked him if he had run from police, and checked his motorcycle (which was cold). Defs' Exh. B at 11. For his part, Plaintiff disputes that he was driving the motorcycle on the date in question and states that he never committed a crime. AMF ¶ 1.[4] The officers then handcuffed Plaintiff. UMF ¶ 12. Plaintiff complained that the cuffs were too tight, to which Mr. Trujillo responded "they weren't meant to be comfortable." UMF ¶ 12. Plaintiff testified that his hands turned purple and that he had white spots on his fingers. UMF ¶ 12; Pl.'s Resp. at ¶ 3. However, neither Probation and Parole nor the handcuffing  probation officers are named as Defendants in this case. UMF ¶ 20.[5]

---

[2]. This argument misses the point, which is simply that Defendant Switzer received information that the motorcycle in question belonged to Plaintiff.

[3] Paragraph 3 of Plaintiff's Response generally disputes UMF at ¶¶ 11-17 as incomplete. However, Plaintiff does not cite to any evidence to controvert these facts. Instead, Plaintiff argues that "[i]t is clear that had Defendant Switzer not called Steven Trujillo and given him incorrect information, Plaintiff would not have been arrested because there was no probable cause to arrest him." Pl.'s Resp. at ¶ 3. All facts contained within UMF ¶¶ 11-17 are accordingly deemed undisputed as arguments of counsel are not evidence. *Fritzsche v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002) ("The argument of counsel is not evidence, and therefore does not provide a proper basis for denying summary judgment.").

[4] The Court notes that Plaintiff's presentation of his additional material facts is contrary to Local Rule 56.1(b), which requires additional material facts to be lettered.

[5] Plaintiff disputes UMF at ¶¶ 19, 20, 29 and 30 as immaterial. Pl.'s Resp. at ¶ 4. Courts in this district have held that "objecting to an asserted fact as immaterial in a summary judgment motion effectively deems the fact undisputed[.]" *Herrera v. Santa Fe Pub. Sch.*, 956 F. Supp. 2d 1191, 1197 (D.N.M. 2013). The Court accordingly finds these facts to be undisputed.

Meanwhile, Defendant Switzer resumed his patrol. UMF ¶ 11. Eventually Defendant Switzer received a call from Mr. Trujillo indicating Plaintiff was being held for Defendant Switzer to speak to him at the Probation and Parole office. UMF ¶ 11. When Defendant Switzer arrived at the Probation and Parole office, Plaintiff was already in handcuffs. UMF ¶ 13. Defendant Switzer believed that Plaintiff resembled the man he was chasing, but did not request an arrest warrant because he could not verify that Plaintiff was, in fact, the same person he was chasing. UMF ¶ 13. Defendant Switzer then told Probation and Parole that he did not have enough information to charge Plaintiff for the motorcycle chase at that time. UMF ¶ 13.

Notwithstanding, Defendant Switzer was advised by Probation and Parole that Plaintiff was in violation of his probation. UMF ¶ 14. Defendant Switzer was then handed an "Arrest Order" for a probation violation, and he transported Plaintiff to jail at Probation and Parole's request. UMF ¶ 14. The Arrest Order was issued by Probation and Parole and was signed off on by Mr. Trujillo and a supervisor for the Bernalillo district office, Jerald Archibeque. Defs' Exh. C. The Arrest Order states that Probation and Parole had reason to believe that Plaintiff violated his probation by "fleeing law enforcement." Defs' Exh. C. The Arrest Order further states that Plaintiff was to be detained because of "multiple or repeated violations of supervision conditions" and because he posed a risk of danger to himself and to the public and was at risk of absconding. Defs' Exh. C. The Arrest Order accordingly authorized Defendant Switzer to arrest and hold Plaintiff for investigation. Defs' Exh. C. Defendant Switzer understood the Arrest Order to be valid. UMF ¶ 16.

Before he took Plaintiff to jail, the handcuffs that were placed on Plaintiff by Probation and Parole were removed and Defendant Switzer placed a different set of handcuffs on him. UMF ¶ 17. Plaintiff testified that at this point he was already sore from the first set of handcuffs and did not believe that Defendant Switzer put the handcuffs on him inappropriately. UMF ¶ 17.

At the time of Plaintiff's arrest Defendant Douglas Wood was the Sherriff of Sandoval County, and Defendant Switzer was a Deputy. UMF ¶ 18. During Defendant Wood's deposition Plaintiff's counsel asked him whether it would be improper for a deputy who did not have full identification of a motorcycle driver to call Probation and Parole and seek an Arrest Order for that driver, and to subsequently execute that Arrest Order. Pl.'s Exh. 5 at 19:3-17. Defendant Wood responded that it would.[6] *Id.* However, Defendant Wood did not testify that Defendant Switzer's actions on the date in question were wrongful. *Id.* Rather, Defendant Wood testified that if Probation and Parole issues a "pickup order" then "the deputy must do the pickup order." Pl.'s Exh. 5 at 18:6-8. Defendant Wood was also asked whether Defendant Switzer's conduct in conducting the pursuit of the motorcycle driver conformed to Sandoval County policy. Pl.'s Exh. 5 at 3:22-7:23. Defendant Wood indicated Defendant Switzer's actions with regard to the pursuit "could be" in conformance with policy. *Id.*

Finally, Plaintiff asserts that Defendant Switzer altered his police report in an "obvious and flagrant manner in order to create the appearance of a proper investigation." AMF at ¶ 3. The alteration of which he complains involves the following statement in the report: "I will ask Magistrate court for a warrant for Ben Sexson for

---

[6] Plaintiff's AMF at ¶ 5 argues that "Defendant Wood testified that the foregoing Additional Material Facts demonstrate wrongful conduct on the part of Defendant Switzer." However, Defendant Wood's answers were at best equivocal on these issues, as demonstrated by the summarized testimony.

7

Eluding, Reckless driving, and Driving a motorcycle without a MC endorsement, *if the proper information develops.* Case active at this time." Pl.'s Exh. 4 at 3 (emphasis indicates the alleged alteration). Plaintiff asserts that Defendant Switzer's supervisor's approval of the report with this alleged "alteration" demonstrates a policy and custom by Defendants of approving "an obviously falsified police report which documented and supported the illegal arrest." AMF at ¶ 4.

## IV.    ANALYSIS

Plaintiff brings six separate causes of action against Defendants. *Doc. 9-1.* Count I and V are brought pursuant to 42 U.S.C. § 1983 and allege that Defendant Switzer's actions violated Plaintiff's Fourteenth and Fourth Amendment rights, respectively. *Id.* at 2, 4-5. Counts II and III allege state tort claims against Defendant Switzer - false imprisonment and "outrage." *Id.* at 3. Count IV alleges a failure to train and supervise Defendant Switzer resulting in both state tort and federal constitutional violations. *Id.* at 4. Finally, Count VI alleges that Defendant Switzer violated a New Mexico statute – NMSA 1978 § 66-8-125 – by arresting Plaintiff without a warrant. *Id.* at 5.

### A) <u>Plaintiff's Fourteenth Amendment Claim (Count I)</u>

Plaintiff's Complaint challenges his arrest by Defendant Switzer, asserting that Defendant Switzer arrested him without probable cause "for a series of alleged crimes committed by another person." *Doc. 9-1* (Complaint) at ¶ 4. Premised upon this allegation, Plaintiff claims that Defendants intended to and did "deprive Plaintiff of due process of law" under the Fourteenth Amendment to the United States Constitution. *Id.* at ¶¶ 8-13.

8

In *Albright v. Oliver*, 510 U.S. 266, 271 (1994), a plurality of the Supreme Court held that a claim alleging an arrest and prosecution without probable cause is not cognizable under the Fourteenth Amendment's substantive due process clause, but rather should be analyzed under the Fourth Amendment. The Tenth Circuit reads *Albright* to preclude similar claims under the procedural due process clause of the Fourteenth Amendment. *Becker v. Kroll*, 494 F.3d 904, 919 (10th Cir. 2007) ("[W]e find *Albright's* reasoning regarding substantive due process equally persuasive with regard to the Fourteenth Amendment's procedural component . . . . The more general due process considerations of the Fourteenth Amendment are not a fallback to protect interests more specifically addressed by the Fourth Amendment . . . .").

This is not to say that there can never be a viable false imprisonment claim under the Fourteenth Amendment, but only that the "'initial seizure is governed by the Fourth Amendment . . . .'" *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1285–86 (10th Cir. 2004)). As the Tenth Circuit summarized in the *Mondragon* case,

> two claims arise from an allegedly unconstitutional imprisonment as analysis "shifts" from the Fourth Amendment to the Due Process Clause. The period of time between an unlawful arrest and the institution of legal process forms one constitutional claim, arising under the Fourth Amendment. That claim accrues when the plaintiff is released or legal process is instituted justifying that imprisonment. The period of time between the institution of that process and its favorable termination—through acquittal, habeas corpus, voluntary dismissal, etc.—forms a second claim, arising under the Due Process Clause. That claim accrues, at the earliest, when favorable termination occurs.

*Mondragon*, 519 F.3d at 1083.

Here, Plaintiff's Fourteenth Amendment claim focuses solely upon his arrest by Defendant Switzer. Hence, the Fourteenth Amendment due process analysis does not

apply. *See Taylor v. Meacham*, 82 F.3d 1556, 1560 (10th Cir. 1996) (citing *Albright* for the proposition that the Fourth Amendment governs pretrial deprivations of liberty and indicating that the "preliminary hearing broke the chain of causation" for any Fourth Amendment violation implicated by the initial arrest).

This conclusion is bolstered by a recent decision by the Tenth Circuit. *See Shimomura v. Carlson*, 811 F.3d 349, 361 (10th Cir. 2015). In *Shimomura*, as the plaintiff was proceeding through security at the Denver International Airport, he got into an argument with TSA agents. *Id.* at 352. Eventually the plaintiff was asked to leave, and, as he was leaving, stopped suddenly and thereby caused a nearby police officer to believe that Shimomura intentionally hit one of the agents with his suitcase. *Id.* The plaintiff was arrested and charged with assault. *Id.*

Pertinent to this case, the *Shimomura* court held that the plaintiff's claims under the due process clauses of the Fifth and Fourteenth Amendments were precluded by the Fourth Amendment, which "provides an explicit textual source of constitutional protection against . . . physically intrusive governmental conduct." *Id.* at 361 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) and citing *Albright*, 510 U.S. at 274-75; *Becker*, 494 F.3d at 919). In concluding, the Tenth Circuit held that where the alleged injury is the deprivation of physical liberty, the Fourth Amendment controls. *Id.*

Accordingly, Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment claim brought in Count I.

### B) <u>Plaintiff's Fourth Amendment Claim (Count V)</u>

The Fourth Amendment to the United States Constitution protects the right of citizens to "be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures." *Becker*, 494 F.3d at 914 (quoting U.S. Const. amend. IV). Arrests under the Fourth Amendment generally require a warrant; however, "[a] warrantless arrest is permissible when an officer 'has probable cause to believe that a person committed a crime.'" *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir.1995)). "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* at 1116 (quoting *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004)). "[P]olice officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid had properly determined the existence of probable cause." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1180 (10th Cir. 2003) (quoting *Whiteley v. Warden*, 401 U.S. 560, 568 (1971)).

Plaintiff's Fourth Amendment claim asserts that Defendants lacked reasonable suspicion to detain him and that Defendant Switzer lacked probable cause to arrest him. *Doc. 9-1* at ¶¶ 30-37. However, because Plaintiff's does not bring suit against the Probation and Parole officers that initially took him into custody, the claim is more specifically levied at Defendant Switzer and his action of executing the Arrest Order produced by Probation and Parole. In this light, Defendant Switzer argues that he is entitled to qualified immunity because he only arrested Plaintiff pursuant to the Arrest Order, which he viewed as a valid arrest warrant. *See Doc. 51* at 10-18.

Plaintiff responds that "[i]n the present case, Defendant Switzer admits that he had no probable cause to seize Plaintiff but caused Plaintiff's probation officer to arrest

Plaintiff anyway." *Doc. 52* at 5. Plaintiff's argument misses the point – it was not

Defendant Switzer who decided to take Plaintiff into custody. Rather, Defendant Switzer

merely executed the facially valid Arrest Order handed to him by Probation and Parole

that alleged numerous violations of Sexson's probation. The Court finds that no clearly

established law put Defendant Switzer on notice that this action alone would violate

Plaintiff's rights. Therefore, Defendant Switzer is entitled to qualified immunity in

conjunction with Plaintiff's arrest.

Section 1983 permits suits for damages against governmental officials who

cause the "deprivation of any rights, privileges, or immunities secured by the

constitution and laws" while acting "under the color of any statute, ordinance, regulation,

custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C.

§ 1983.

> "Individual defendants named in a § 1983 action may raise a defense of
> qualified immunity," . . . which "protects 'government officials performing
> discretionary functions' and shields them from 'liability for civil damages
> insofar as their conduct does not violate clearly established statutory or
> constitutional rights of which a reasonable person would have known.'"

*Pauly v. White*, ___ F.3d ____, 2016 WL 502830, at *6 (10th Cir. Feb. 9, 2016) (quoting

*Cillo v. City of Greenwood Village*, 739 F.3d 451, 459 (10th Cir. 2013); *Swanson v.*

*Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009)). "Law

enforcement officers are, of course, entitled to a presumption that they are immune from

lawsuits seeking damages for conduct they undertook in the course of performing their

jobs." *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011). "A plaintiff can overcome

this presumption of immunity only by carrying the heavy burden of showing both that

(1) the defendant-officer in question violated one of his constitutional rights, and (2) the

infringed right at issue was clearly established at the time of the allegedly unlawful activity[.]" *Id.* "Courts have discretion to decide the order in which to engage these two prongs." *Tolan*, 134 S. Ct. at 1866. In this case, the Court's analysis begins and ends with the clearly established prong.

"In deciding the 'clearly established law' question [the Tenth Circuit] employs a 'sliding scale' under which 'the more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.'" *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015). However, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citing *Ashcroft v. al–Kidd*, 131 S.Ct. 2074, 2080 (2011)). This means that, ordinarily, "for a rule to be clearly established there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Fancher v. Barrientos*, 723 F.3d 1191, 1201 (10th Cir. 2013) (quoting *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007)). And the Supreme Court has "'repeatedly told courts . . . not to define clearly established law at a high level of generality,' . . . since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, 134 S. Ct. at 2023 (citing *Ashcroft*, 131 S.Ct. at 2074). "Particularly apropos to this case is the [Supreme] Court's admonition that '[t]he general proposition . . . that an unreasonable search or seizure violates the Fourth Amendment is of little help in

determining whether the violative nature of particular conduct is clearly established.'" *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting *Ashcroft*, 131 S.Ct. at 2084).

Plaintiff has not met his "heavy burden" in this case. Plaintiff cites no law that would have put a reasonable officer in Defendant Switzer's position on notice that arresting Plaintiff pursuant to the Arrest Order issued by Probation and Parole violated Plaintiff's clearly established Fourth Amendment rights. To the contrary, the only law Plaintiff sets forth in his Response pertains to traffic stops and the generalized notion that a warrantless arrest must be premised upon probable cause. *Doc. 52* at 4-5. "This caselaw void is significant and ultimately determinative" of Defendant Switzer's asserted entitlement to qualified immunity in this case. *See Quinn*, 780 F.3d at 1007.

It is undisputed that Defendant Switzer did not arrest Plaintiff for the underlying vehicle chase. Once he had the opportunity to observe Mr. Sexson at the Probation and Parole office in Bernalillo, Defendant Switzer stated that he could not positively identify him as the individual driving the motorcycle. He further admitted that he did not have enough information to arrest Plaintiff for offenses related to the chase. Instead, at the request Probation and Parole officers, Defendant Switzer transported Plaintiff to jail pursuant to the facially valid Arrest Order issued by those Probation and Parole officers pursuant to New Mexico law. *See* NMSA 1978, § 31-21-15(A)(3) (discussed in more detail below). Plaintiff identifies no clearly established law that would put Defendant Switzer on notice that an arrest pursuant to a valid Arrest Order issued by Probation and Parole violates the Fourth Amendment. Because Defendant Switzer relied upon that Order to justify Plaintiff's arrest, his reliance is protected by qualified immunity.

This much is clear from the Arrest Order itself and the New Mexico law supporting it. In New Mexico,

> [a]t any time during probation . . . the director [of the field services division or any employee designated by him] may arrest a probationer without warrant or may deputize any officer with power of arrest to do so by giving the officer a written statement setting forth that the probationer has, in the judgment of the director, violated the conditions of the probationer's release.

NMSA 1978, § 31-21-15(A)(3); NMSA 1978, § 31-21-5(E); *see State v. Ponce*, 2004-NMCA-137, ¶ 10, 136 N.M. 614, 618, 103 P.3d 54, 58. The Arrest Order in this case appears to be the "written statement" contemplated by Section 31-21-15(A)(3). Such Orders are authorized under New Mexico regulations when a probation officer seeks to detain "an offender for a serious or continued probation . . . violation [ ], or when investigating such violation[ ]." *Ponce*, 2004-NMCA-137, ¶ 11. Under the plain language of Section 31-21-15(A)(3), it was Plaintiff's probation officers' prerogative to deputize Defendant Switzer for the purpose of arresting Plaintiff for a probation violation. Once he had the Arrest Order in hand, no law put Defendant Switzer on notice that merely executing that document by transporting Plaintiff to jail could violate Plaintiff's constitutional rights.

To the contrary, the Tenth Circuit and judges in this district have held the mere execution of a facially valid arrest warrant often entitles the executing officer to absolute, rather than qualified, immunity. *See Martin v. Bd. of County Com'rs of County of Pueblo*, 909 F.2d 402, 404 (10th Cir. 1990); *Rivera v. Bates*, 2014 WL 3421050, at *46 (D.N.M. June 21, 2014) (Browning, J.). While the Arrest Order in this case is not the same as an arrest warrant issued by a judge, *see Reid v. Pautler*, 36 F. Supp. 3d 1067, 1186 (D.N.M. 2014) (finding that a New Mexico probation officer's act of filling out an Arrest

15

Order "is more analogous to a police officer seeking a warrant than to a judicial act."), it still provided Defendant Switzer with apparent lawful cause to take Plaintiff into custody. *Compare  Chavez v. County of Bernalillo*, 3 F. Supp. 3d 936, 994 (D.N.M. 2014) (Browning, J.) (holding that the presence of a facially valid, but actually invalid, arrest warrant precluded a Fourth Amendment claim against a jailer). While such orders do not absolve the arresting officer of liability if the force used in executing the warrant is excessive, *Martin*, 909 F.2d at 404, Plaintiff Sexson does not allege that Defendant Switzer executed the Arrest Order in an unlawful or excessive manner. Thus, Defendant Switzer is entitled to qualified immunity on Plaintiff's Fourth Amendment claim.

### C) Plaintiff's Federal Municipal and Supervisory Liability Claims (Count IV)

In Count IV, Plaintiff asserts that Defendant Switzer's supervisors breached their duty to adequately train and supervise him in violation of both New Mexico state law and § 1983. *Doc. 9-1* at ¶¶ 23-29. At this point, the Court addresses only the federal component of the claims set forth in Count IV. Defendants Sandoval County Sheriff's Department and Defendant Sheriff Wood assert that they are entitled to summary judgment on these federal claims because there are no facts on record establishing Defendant Wood's personal participation in any alleged violation of Plaintiff's constitutional rights, or establishing that the Sheriff's Department had a policy of arresting individuals without probable cause. *Doc. 51* at 18-22.

In response, Plaintiff asserts that a genuine issue of material fact precludes summary judgment on these claims for two reasons. *Doc. 52* at 6. The first relates to an alleged "alteration" in Defendant Switzer's Uniform Incident Report. Plaintiff argues that "[h]ad Defendant Switzer had appropriate supervision (as per Sheriff Wood's testimony),

the Arrest Order behind which Defendant Switzer was the 'moving' force would not have issued." *Id.* Plaintiff goes on to argue that "[f]urther, there is a genuine issue of fact as to whether a sergeant or supervisory officer oversaw the original pursuit, which again may have resulted in Plaintiff not being arrested for a crime he did not commit." *Id.* The Court is not persuaded by either argument.

**1.   *Municipal Liability of the Sandoval County Sheriff's Department***

Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 691–92 (1978), a municipality may be held liable for the commission of a constitutional tort if the plaintiff shows that the tort resulted from the enactment or maintenance of an official policy or custom. *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 769 (10th Cir. 2013). In order to maintain a *Monell* claim, a plaintiff must establish three elements: (1) an official policy or custom, (2) causation, and (3) state of mind. *Id.*

"A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Id.* at 770. To establish causation a plaintiff must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* (quoting *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997)). This standard is not akin to vicarious liability; rather, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* (quoting *Brown*, 520 U.S. at 405). Furthermore, "[t]he causation element is applied with

17

especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." *Id.* (citation omitted). Finally, "[a] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Id.* (quoting *Brown*, 520 U.S. at 407). Proving deliberate indifference generally requires a plaintiff to establish that the municipality was on notice that "its failure to act is substantially certain to result in a constitutional violation" by either proving the existence of a pattern or tortious conduct or by showing that "a violation of federal rights is a highly predictable or obvious consequence of a municipality's action or inaction." *Id.* (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1306 (10th Cir. 1998)).

Plaintiff does not point to an official policy issued or maintained by the Sandoval County Sheriff's Department which permits the arrest of suspects absent probable cause. Instead, Plaintiff asserts that the Department inadequately trained and supervised Defendant Switzer. *Doc. 9-1* at ¶¶ 23-29. However, Plaintiff fails to explain how Defendant Switzer's training was deficient, how that deficiency in training caused Defendant Switzer to violate his constitutional rights, or how the Department was deliberately indifferent to the need for additional training in these circumstances. Plaintiff's inadequate training claim accordingly fails as a matter of law because Plaintiff "has failed to show, as the law requires, that the need for more or different training was so obvious" that violation of his constitutional rights was likely to result from not providing it. *Schneider*, 717 F.3d at 773-74; *see also Bryson v. City of Oklahoma City*,

627 F.3d 784, 789 (10th Cir. 2010) (finding that it was not "highly predictable or plainly obvious that a forensic chemist would decide to falsify test reports and conceal evidence if she received only nine months of on-the-job training").

Plaintiff's claims that the Department failed to adequately supervise Defendant Switzer fare no better. Even if the Court takes as a given that the Department inadequately supervised Defendant Switzer by virtue of his supervisor's signature on his police report, Plaintiff fails to explain how this action caused Defendant Switzer to violate Plaintiff's constitutional rights. Defendant Switzer's police report was approved after Plaintiff had already been taken into custody pursuant to the Arrest Order issued by Probation and Parole. *See* Pl.'s Exhibit 4 (showing that the police report was completed on September 28, 2012, and approved on October 4, 2012). The Department's actions post-arrest are simply irrelevant to the material question before the court—"whether the [Department] consciously or deliberately chose to ignore a risk of harm which [it] had been put on notice of either by a past pattern of wrongful acts or by the high predictability that wrongful acts would occur." *Bryson*, 627 F.3d at 790.

As to Plaintiff's allegation that Defendant Switzer should have been supervised during the motorcycle chase that preceded Plaintiff's arrest, Plaintiff again fails to explain how this allegedly deficient supervision caused Defendant Switzer to violate his constitutional rights. In other words, even assuming *arguendo* that the Department's failure to supervise constitutes a policy or custom under *Monell*, Plaintiff has failed to show that the Department's failure to supervise Defendant Switzer was the moving force behind Plaintiff's arrest or that Defendant Switzer would have acted any differently had a supervisor been involved in the chase. *Compare Schneider*, 717 F.3d at 779

("Ms. Schneider has not pointed to any particular action the sergeant would have taken. Nor has she shown how any particular action on the sergeant's part would have prevented his attack on Ms. Schneider."). Plaintiff's municipal liability claim therefore fails as a matter of law.

### 2. *Supervisory Liability of Defendant Sheriff Wood*

"The Tenth Circuit has held that supervisors may be liable under 42 U.S.C. § 1983 when a plaintiff can establish the 'defendant-supervisor's personal involvement by demonstrating [the supervisor's] 'personal participation, . . . exercise of control or direction, . . . failure to supervise,' or . . .  'knowledge of the violation and acquiescence in its continuance.'" *Herrera v. Santa Fe Pub. Sch.*, 956 F. Supp. 2d 1191, 1223 (D.N.M. 2013) (Browning, J.) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1194 (10th Cir. 2010)). This standard again is not akin to vicarious liability. *Schneider*, 717 F.3d at 767. Rather, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

> The plaintiff therefore must show an "affirmative link" between the supervisor and the constitutional violation. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir.2010). This requires, for example, more than "a supervisor's mere knowledge of his subordinate's" conduct. *See Iqbal*, 556 U.S. at 677, 129 S.Ct. 1937. This notion is embodied in the three elements required to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation, and (3) state of mind.

*Id.* at 768.

The contours of what is necessary to establish "personal involvement" post-*Iqbal* have not been decided by the Tenth Circuit. *Id.*; *see also Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) ("The contours of the first requirement for supervisory liability are still somewhat unclear after *Iqbal*, which "articulated a stricter

20

liability standard for ... personal involvement.") (quoting *Schneider*); *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015). However, the Tenth Circuit "continue[s] to require plaintiffs to demonstrate "that each defendant acted with the constitutionally requisite state of mind" by "identify[ing] . . . specific policies over which particular defendants possessed supervisory responsibility[ ] that violated their clearly established constitutional rights." *Cox*, 800 F.3d at 1249. The personal involvement element dovetails with causation, under which "[a] plaintiff must establish the 'requisite causal connection' by showing 'the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Schneider*, 717 F.3d at 768 (quoting *Dodds*, 614 F.3d at 1200).

The requisite "state of mind" required to support a supervisory liability claim "depends on the type of claim a plaintiff brings." *Schneider*, 717 F.3d at 769 (citing *Iqbal*, 556 U.S. at 676; *Dodds*, 614 F.3d at 1204-05). At a minimum, the required state of mind is no less than the *mens rea* required of the supervisor's subordinates to commit the underlying constitutional violation. *Cox*, 800 F.3d at 1249. "Because 'mere negligence' is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with 'deliberate indifference' that a constitutional violation would occur." *Serna v. Colorado Dept. of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (citations omitted).

Plaintiff's supervisory liability claim against Defendant Wood mirrors his municipal liability claim against the Department. *Doc. 9-1* at ¶¶ 23-29. The Court agrees with Defendants that there is also no evidence that Defendant Wood was personally

involved in Plaintiff's arrest, or that his failure to train or supervise Defendant Switzer amount to personal involvement necessary to maintain a supervisory liability claim. Defendant Wood was not present for Plaintiff's arrest and in no manner directed or planned it. *Compare Fogarty v. Gallegos*, 523 F.3d 1147, 1163 (10th Cir. 2008) (denying summary judgment to a police captain who was personally present for the plaintiff's arrest and who planned the response to the protest where the plaintiff was arrested). In this sense, Defendant Wood did not "set in motion a series of acts by others which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Id.* (brackets and quoted authority omitted). To the contrary, nothing in the record suggests that Defendant Wood directly supervised Defendant Switzer at any point during or after Plaintiff's arrest. *Compare Serna*, 455 F.3d at 1153 ("Nothing suggests he directly supervised the on-site conduct of the team from 50 miles away or participated in the planning and execution of the operation."). There is also no evidence that Defendant Wood created, implemented or utilized a policy permitting the warrantless arrest of probationers. *Dodds*, 614 F.3d at 1195.

In terms of causation and the requisite mental state, as with Plaintiff's municipal liability claims, there is no evidence in the record showing that Defendant Wood's alleged failure to train or supervise Defendant Switzer caused the violation of Plaintiff's constitutional rights. This is not a case where Plaintiff has established a series of improper acts by Defendant Switzer that should have put Defendant Wood on notice that he was in need of additional training or supervision. *Compare Schneider*, 717 F.3d at 779 ("Ms. Schneider would need to show that if Sergeant Baker had known the relevant details, he would have taken *specific* actions and that these actions would have

prevented Officer Coyne's attack. She has not provided such evidence.") (emphasis in original). Rather, in this case there is no evidence that Defendant Wood should have been on notice that Defendant Switzer required more training, or that leaving him unsupervised would result in the violation of Plaintiff's constitutional rights. Therefore, Plaintiff has failed to establish both the causation and state of mind elements necessary to maintain his supervisory liability claim.

### D) The Court will Decline to Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims (Counts II, III, IV and VI)

Having disposed of Plaintiffs' federal claims, the court declines to exercise supplemental jurisdiction over the remaining state law claims, and they will be remanded to the state court from which they were removed. 28 U.S.C. § 1367(c)(3); *Brooks v. Gaenzle*, 614 F.3d 1213, 1229-30 (10th Cir. 2010) ("[i]f federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.") (quoting *Bauchman v. West High Sch.*, 132 F.3d 542, 549 (10th Cir.1997) (internal quotation marks omitted)). This is especially true here because Plaintiff's novel state law claim in Count VI is premised on two potentially conflicting New Mexico statutes. "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Ball v. Renner,* 54 F.3d 664, 669 (10th Cir.1995) (internal quotation marks and citation omitted).

### V.    CONCLUSION

There are no genuine disputes of any material fact, and the material facts establish that Defendant Switzer is entitled to qualified immunity. Addressing the second prong of the qualified immunity analysis, this Court concludes that the law was not

clearly established that by arresting Plaintiff pursuant to the Arrest Order issued by Probation and Parole, he could be violating Plaintiff's constitutional rights. Plaintiff also fails to present evidence identifying actions taken by Defendant Sandoval County Sherriff's Department or Defendant Sherriff Wood that would have violated his constitutional rights to establish the municipal or supervisory liability federal claims.

Wherefore,

IT IS THEREFORE ORDERED that Defendants' Motion and Memorandum for Summary Judgment on All Claims (*Doc.* 51) is **granted in part**. A final judgment pursuant to Rule 58 will be entered concurrently on the federal claims.

IT IS FURTHER ORDERED that the remaining state law claims are hereby remanded to the Thirteen Judicial District Court, Sandoval County.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent